**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Shireen M. Clarkson (SBN 237882)
*sclarkson@clarksonlawfirm.com*
Katherine A. Bruce (SBN 288694)
*kbruce@clarksonlawfirm.com*
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiff*

**MOON LAW APC**
Christopher D. Moon (SBN 246622)
*chris@moonlawapc.com*
Kevin O. Moon (SBN 246792)
*kevin@moonlawapc.com*
228 Hamilton Ave., 3rd Fl
Palo Alto, California 94301
Tel: (619) 915-9432
Fax: (650) 618-0478

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS IGLESIAS, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> FOR LIFE PRODUCTS, LLC, <br><br> Defendant. | Case No.: <br><br> **CLASS ACTION COMPLAINT** <br> 1. Violation of Cal. Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*) <br> 2. Violation of Cal. False Advertising Law (Cal. Bus. & Prof. Code §§ 17500, *et seq.*) <br> 3. Violation of Cal. Consumer Legal Remedies Act (Cal. Civ. Code §§ 1750, *et seq.*) <br> 4. Breach of Express Warranty <br> 5. Unjust Enrichment <br><br> **JURY TRIAL DEMAND** |

Plaintiff Thomas Iglesias ("**Plaintiff**"), individually and on behalf of all others similarly situated, as more fully described herein (the "**Class**" and "**Class Members**"), brings this class action against For Life Products, LLC ("**Defendant**"), and alleges the following[1] based upon information and belief, unless otherwise expressly stated as based upon personal knowledge:

/ / /

/ / /

/ / /

/ / /

---

[1] To the extent any allegations appear inconsistent, they are pled in the alternative.

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

# TABLE OF CONTENT

COMPLAINT ...........................................................................................................................4

I.   NATURE OF THE ACTION ...........................................................................................4

II.  JURISDICTION ...............................................................................................................7

III. VENUE .............................................................................................................................7

IV.  PARTIES ..........................................................................................................................7

    A.   Plaintiff ....................................................................................................................7

    B.   Defendant ................................................................................................................8

V.   FACTUAL ALLEGATIONS ...........................................................................................9

    A.   The "SAFE FOR PETS & KIDS" Representation Is False, Misleading,

        and Deceptive ..........................................................................................................11

    B.   The False Certification Is False, Misleading, and Deceptive ................................11

    C.   The Products Can Cause Harm to Humans (Including Children) and Pets ...........16

        Diethylene glycol ethyl ether ("DEGEE") ...........................................................16
        Dipropylene glycol methyl ether ("DPGME") .....................................................17
        Fragrance ................................................................................................................17
        1-octanesulfonic acid .............................................................................................17
        Sodium hexametaphosphate ..................................................................................18
        Sodium metasilicate pentahydrate .........................................................................18
        Sodium sulfate ........................................................................................................18
        Tetrasodium pyrophosphate ..................................................................................18

    D.   The Products' Safety Data Sheets .........................................................................18

        (1)   ALL FLOORS CLEANER ............................................................19
        (2)   ALL FLOORS RESTORER ..........................................................20
        (3)   CABINET & FURNITURE CLEANER .......................................21
        (4)   CABINET & FURNITURE RESTORER .....................................21
        (5)   CARPET & UPHOLSTERY PET STAIN REMOVER ...............22
        (6)   CARPET CLEANER .....................................................................23
        (7)   GRANITE & STONE CLEANER ................................................23
        (8)   GROUT DEEP CLEANER ............................................................24
        (9)   LEATHER & VINYL CLEANER ................................................24
        (10)  LUXURY VINYL FLOOR CLEANER ........................................25
        (11)  MARBLE, GRANITE & STONE FLOOR CLEANER .................26
        (12)  OUTDOOR COLOR RESTORER .................................................26
        (13)  RESTORER WIPES ......................................................................27
        (14)  SHINE REFRESHER ....................................................................27
        (16)  SOAP SCUM REMOVER .............................................................28
        (17)  STAINLESS STEEL CLEANER & POLISH ...............................28
        (18)  STONE, TILE & LAMINATE FLOOR CLEANER .....................29
        (19)  TILE & GROUT EVERYDAY CLEANER ..................................30
        (21)  WOOD FLOOR RESTORER – GLOSS ........................................30

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

(22)     WOOD FLOOR RESTORER – SATIN .....................................................31

E.      Plaintiff and Reasonable Consumers Were Misled by the Products'

Challenged Representations........................................................31

F.      The Products Are Substantially Similar.........................................32

V.  CLASS ACTION ALLEGATIONS ............................................................33

VI. CAUSES OF ACTION ............................................................................37

COUNT ONE .....................................................................................37

Violation of California Unfair Competition Law

(Cal. Bus. & Prof. Code §§ 17200, et seq.)

A.      "Unfair" Prong .............................................................40

B.      "Fraudulent" Prong ......................................................41

C.      "Unlawful" Prong .........................................................42

COUNT TWO ....................................................................................43

Violation of California False Advertising Law

(Cal. Bus. & Prof. Code §§ 17500, et seq.)

COUNT THREE ................................................................................45

Violation of California Consumers Legal Remedies Act

(Cal. Civ. Code §§ 1750, et seq.)

COUNT FOUR ..................................................................................48

Breach of Express Warranty

COUNT FIVE .....................................................................................49

Unjust Enrichment

VII. PRAYER FOR RELIEF .........................................................................51

DEMAND FOR JURY TRIAL ....................................................................52

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

**I.**

**NATURE OF THE ACTION**

1.     **Synopsis.** In an effort to increase profits and to gain an unfair advantage over its lawfully acting competitors, Defendant misleadingly and deceptively labels certain of its Rejuvenate brand cleaning products as being "SAFE FOR PETS & KIDS" (hereinafter, "**Safety Representation**"). Defendant also misleadingly and deceptively designed the Safety Representation to resemble an independent third-party certification or seal of approval (hereinafter, "**False Certification**" and collectively with Safety Representation, "**False Advertising Claims**" and/or **"Challenged Representations"**). Examples of the Challenged Representations are depicted below. The Challenged Representations have misled reasonable consumers, including Plaintiff, into believing the Products are safe for pets and humans (including children) and/or otherwise do not pose a risk of harm to them.  However, contrary to the labeling, the Products (identified *infra*) are **not** safe, as they can cause harm to humans (including children) and pets. Through falsely, misleadingly, and deceptively labeling the Products, Defendant sought to take advantage of consumers' desire for cleaning products that are safe for children (and adults) and pets. Defendant has done so at the expense of unwitting consumers, as well as Defendant's lawfully acting competitors, over whom Defendant maintains an unfair competitive advantage.

///

///

///

///

///

///

///

///

///

///

///

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069





2.  **The Products.** The falsely labeled Rejuvenate products at issue are as follows:

(1)  Rejuvenate All Floors Cleaner

(2)  Rejuvenate All Floors Restorer

(3)  Rejuvenate Cabinet & Furniture Cleaner

(4)  Rejuvenate Cabinet & Furniture Restorer

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

(5)     Rejuvenate Carpet & Upholstery Pet Stain Remover

(6)     Rejuvenate Carpet Cleaner

(7)     Rejuvenate Granite & Stone Cleaner

(8)     Rejuvenate Grout Deep Cleaner

(9)     Rejuvenate Leather & Vinyl Cleaner

(10)    Rejuvenate Luxury Vinyl Floor Cleaner

(11)    Rejuvenate Marble, Granite & Stone Floor Cleaner

(12)    Rejuvenate Outdoor Color Restorer

(13)    Rejuvenate Restorer Wipes

(14)    Rejuvenate Shine Refresher

(15)    Rejuvenate Siding Restorer

(16)    Rejuvenate Soap Scum Remover

(17)    Rejuvenate Stainless Steel Cleaner & Polish

(18)    Rejuvenate Stone, Tile & Laminate Floor Cleaner

(19)    Rejuvenate Tile & Grout Everyday Cleaner

(20)    Rejuvenate Wood Floor Cleaner

(21)    Rejuvenate Wood Floor Restorer – Gloss

(22)    Rejuvenate Wood Floor Restorer – Satin

(collectively, the "**Products**").  A true and correct copy of each Product's front label is attached hereto as Exhibit 1.

3.     **Primary Objective.** Plaintiff brings this action individually and on behalf of those similarly situated to represent a National Class and a California Subclass of consumers who purchased the Products (defined *infra*). Plaintiff seeks damages, restitution, and disgorgement of the Products' purchase price and Defendant's ill-gotten gains, as consistent with permissible law. Plaintiff further seeks injunctive relief to stop Defendant's unlawful labeling and advertising of the Products and dispel the public's misconception caused by the Challenged Representations, as Plaintiff's primary litigation objective is to enjoin Defendant's unlawful labeling practices for the benefit of consumers, including the National Class and California Class.

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

## II.

## JURISDICTION

4.    This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, codified at 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000 (exclusive of costs and interest); and minimal diversity exists. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## III.

## VENUE

5.    Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District. In addition, Plaintiff purchased the unlawful Products in this District, and Defendant has marketed, advertised, and sold the Products within this District.

## IV.

## PARTIES

A.    **Plaintiff**

6.    **Plaintiff Thomas Iglesias ("Plaintiff")**.    The following is alleged based upon personal knowledge:  (1) Plaintiff is a resident of the City of San Francisco, California.  (2) In approximately early 2020, at the Lowes in San Francisco, California, Plaintiff purchased Product No. 16, the Rejuvenate Soap Scum Remover, for approximately $9 to $10, and Product No. 21, the Rejuvenate Wood Floor Restorer—Gloss, for approximately $20 to $22 at the Lowes located in San Francisco, California.    (3) In making the purchase, Plaintiff relied on the Challenged Representations stated on each Product's label. (4) At the time of purchase, Plaintiff did not know that the Challenged Representations were false.  (5) Plaintiff would not have purchased the Products had Plaintiff known that the Challenged Representations were false. (6) Plaintiff continues to see the Products available for purchase and desires to purchase them again if the Challenged Representations were in fact true.  (7) Plaintiff is, and continues to be, unable to rely on the truth of the Products' Challenged Representations.  (8) Plaintiff does have personal knowledge of the

CLASS ACTION COMPLAINT

Products' formulations or have personal knowledge of whether the Products' formulations (ingredients and in-use concentrations) pose a risk of harm to humans, animals, or the environment.

7. **Plaintiff's Future Harm.** If the Products were actually safe for humans and pets as labeled and advertised, Plaintiff would purchase the Products again in the future, despite the fact that the Products were once marred by false advertising or labeling. Therefore, Plaintiff would reasonably, but incorrectly, assume the Products were improved. In that regard, Plaintiff is an average consumer who is not sophisticated in the chemistry or formulations of cleaning products, such as the Products. Accordingly, Plaintiff is at risk of reasonably, but incorrectly, assuming that Defendant fixed the formulation of the Products to conform to the Challenged Representations on the Products' labels, such that Plaintiff may buy them again, believing they were no longer falsely advertised and labeled. In a similar fashion, Plaintiff is, and continues to be, unable to rely on the truthfulness of the Challenged Representations.

**B.   Defendant**

8. **Defendant For Life Products, LLC** is a limited liability company organized under the laws of Florida, with its principal place of business in Miramar, Florida. At all relevant times, Defendant has been doing business in the State of California during all relevant times—specifically, advertising and selling the Products using the Challenged Representations. As a result, Defendant has directly and through its agents had substantial contacts with, and received substantial benefits and income from, the State of California. Defendant is the manufacturer, distributor, seller, and marketer of the Products. Defendant created, approved, authorized, and/or ratified the false, misleading, and deceptive labeling of the Products—specifically, the Challenged Representations. Defendant and its employees and agents promoted, marketed, and sold the Products at issue in this jurisdiction and in this judicial district. The unfair, unlawful, deceptive, and misleading Challenged Representations on the Products were prepared, authorized, ratified, and/or approved by Defendant and its agents, and were disseminated throughout California and the United States by Defendant and its agents, to deceive and mislead consumers into purchasing the Products in reliance on the Challenged Representations that are, in actuality, false, misleading, and deceptive.

## V.

## FACTUAL ALLEGATIONS

9.     **Background.** In recent years, consumers have increasingly sought out household cleaning products that are safe for humans, including children, as well as pets. In response to consumers' desire for safe cleaning products, many companies "greenwash" their products by deceptively claiming that their cleaning products are safe. Unfortunately, rather than creating the safe products that consumers desire, many companies, like Defendant, have chosen instead to misleadingly and deceptively label their products by suggesting and outright stating that their cleaning products are safe when, in fact, they are not.

10.     **The Rejuvenate Brand.** According to Defendant's website, "For Life Products, LLC, creates, owns, markets and distributes the 'Rejuvenate' brand surface care cleaning and renewal products to 40,000 retail stores in the US, and Canada, Europe, Dubai, in the chains such as: The Home Depot, Lowes, Walmart, Menards, Ace, Do it Best!, Bed Bath and Beyond, QVC, The Shopping Channel, and more."[2]  For Life Products, LLC, was founded by Joseph A. McDonnell, who touts his "strategic use of **fear-based marketing**" in connection with a prior business.[3]

11.     **Products.** As described *supra*, Defendant manufactures, markets, advertises, labels, and sells the Products: (1) Rejuvenate All Floors Cleaner; (2) Rejuvenate All Floors Restorer; (3) Rejuvenate Cabinet & Furniture Cleaner; (4) Rejuvenate Cabinet & Furniture Restorer; (5) Rejuvenate Carpet & Upholstery Pet Stain Remover; (6) Rejuvenate Carpet Cleaner; (7) Rejuvenate Granite & Stone Cleaner; (8) Rejuvenate Grout Deep Cleaner; (9) Rejuvenate Leather & Vinyl Cleaner; (10) Rejuvenate Luxury Vinyl Floor Cleaner; (11) Rejuvenate Marble, Granite & Stone Floor Cleaner; (12) Rejuvenate Outdoor Color Restorer; (13) Rejuvenate Restorer Wipes; (14) Rejuvenate Shine Refresher; (15) Rejuvenate Siding Restorer; (16) Rejuvenate Soap Scum Remover; (17) Rejuvenate Stainless Steel Cleaner & Polish; (18) Rejuvenate Stone, Tile & Laminate Floor Cleaner; (19) Rejuvenate Tile & Grout Everyday Cleaner; (20) Rejuvenate Wood Floor Cleaner; (21) Rejuvenate Wood Floor Restorer – Satin; and (22) Rejuvenate Wood Floor Restorer – Gloss).

---

[2] https://www.rejuvenateproducts.com/about-us.
[3] *Id.* (emphasis added).

CLASS ACTION COMPLAINT

12. **Challenged Representations on Products' Front Labels.**  Also as described *supra*, Defendant falsely and misleadingly labels the Products with the Challenged. True and correct images of the All Floors Cleaner and Cabinet & Furniture Cleaner Products appear below and true and correct images of all Product front labels are attached hereto as Exhibit 1 (Product Images), each of which depicts the same Challenged Representations:




CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

**A.**    <u>The "SAFE FOR PETS & KIDS" Representation Is False, Misleading, and Deceptive</u>

13.    **Safety Representation.**  Defendant prominently and uniformly labels the front display panel of the Products with the representation "SAFE FOR PETS & KIDS," which is written in large, capital lettering (the "**Safety Representation**"). The "SAFE FOR PETS & KIDS" claim is positioned immediately beneath an image of a child playing with a dog, adjacent to a man and woman holding hands ("**Family Image**"). Between the Family Image and the Safety Representation are two green leaves ("**Nature Image**"). These representations and images are collectively referred to as the "Safety Representation".

14.    **Perception**. Based on the Safety Representation, reasonable consumers, including Plaintiff, believe the Products do not pose any risk of harm to humans or pets.

15.    **Dictionary.** Plaintiff's and reasonable consumers' understanding of the Safety Representation is consistent with Merriam Webster's dictionary definition of the word "Safe," which is "**free from harm or risk**: **UNHURT**."[4]

16.    **Family & Nature Images.** This understanding is reinforced by the Family Image, which communicates to consumers a happy and healthy family, including the family's pet dog. Moreover, the Nature Image and green coloring suggest the Products are natural and environmentally friendly.

17.    **Falsity of Perception.** However, as explained in detail *infra*, in spite of the labeling, the Products are **not** "safe" because they can cause harm to humans and pets.

**B.**    <u>The False Certification Is False, Misleading, and Deceptive</u>

18.    **Third Party Certifications.** In addition, the design of the Safety Representation, Family Image, and Nature Image (in combination, "**False Certification**"), resembles an independent third-party certification or seal of approval often found on consumer products. In general, third-party certifications suggest an independent, unbiased, and/or knowledgeable organization has evaluated and confirmed the products conform to related advertising or performance claims. Consumers generally rely on third-party certifications to efficiently and effectively identify products that meet standards, and, in the context of purportedly safe and/or non-

---

[4] *See* https://www.merriam-webster.com/dictionary/safe?utm_campaign=sd&utm_medium=serp&utm_source=jsonld (emphasis added).

toxic cleaning products, frequently indicate the product has certain health or environmental benefits.

19.    **Greenguard Certification.**  Specifically, Defendant's False Certification resembles other third-party certifications or seals of approvals, such as the GREENGUARD Certification, which is a third-party certification concerning chemical emissions that contribute to air pollution.



20.    In fact, certain of Defendant's Products were, at one time, labeled with the GREENGUARD Certification. However, Defendant subsequently replaced the GREENGUARD Certification with the False Certification. As such, Defendant recognized the benefits of labeling the Products with a third-party certification, or, in the case of the False Certification, Defendant's own misleading certification.

21.    **EPA Safer Choice Certification.**  Furthermore, the United States Environmental Protection Agency's coveted Safer Choice Certification label represents that a product bearing the certification has met very stringent human health and environmental criteria.[5] In fact, a number of Defendant's competitors manufacture and sell cleaning products that qualify for EPA's Safer Choice Certification and, consequently, those products bear the Safer Choice Certification on their front display panel.[6]

22.    Defendant's False Certification appears ***strikingly similar*** to EPA's Safer Choice

---

[5] *See* https://www.epa.gov/saferchoice/learn-about-safer-choice-label.
[6] *See* https://www.epa.gov/saferchoice/products.

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

Certification—a well-recognized and sought-after certification—a true and correct copy of which is depicted immediately below.  Both the False Certification and EPA Safer Choice Certification depict similar human-like characters, beneath which are nearly identical green leaves, as well as prominent messaging regarding safety.

EPA's Safer Choice Certification                    Defendant's False Certification

          

23.     By way of another example, the False Certification also resembles the Biodegradable Products Institute's ("BPI") Certification, a true and correct copy of which is depicted immediately below. The BPI Certification "indicates third-party verification of compostability for manufacturers and brand owners to use on products and packaging and for consumers, end-users, and composters to use when determining whether or not a product or package is compostable."[7]



---

[7] *See* https://bpiworld.org/Value-Of-Certification.

13

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

24.     Indeed, BPI underscores the importance of third-party certifications to consumers:

> Compostable products and packaging exist to help facilitate the diversion of food scraps from landfills. Unfortunately, the threat of contamination from "look alike" non-compostable packaging has led some composters to discontinue accepting even certified compostable items. In order for compostable products and packaging to perform their intended function, they should be readily and easily identifiable by end-users, consumers, composters and others so they can be differentiated from their non-compostable counterparts. The guidelines put forth in this document reflect the belief that a consistent identification strategy employed by product manufacturers and brand owners is a key driver in achieving differentiation and will assist in the acceptance of food scraps and compostable products and packaging on a larger scale.[8]

25.     **Falsity of False Certification.**  However, unlike these certification examples, Defendant's False Certification is ***not*** awarded by an independent, third-party certifier, which has objectively evaluated the Products and/or confirmed the Products conform to the Safety Representation.  Rather, the False Certification ***is entirely Defendant's creation***.  That is, Defendant itself concocted the False Certification and placed it on its Products.  Because the False Certification leads reasonable consumers, including Plaintiff, to believe that an independent, third-party certifier has determined the Products are safe—when they are not—the False Certification is misleading and therefore unlawful.

26.     **FTC Green Guides.** Recognizing this very problem, the United States Federal Trade Commission created the "Green Guides" to help companies, like Defendant, avoid making misleading and deceptive claims.[9]  The Green Guides, and the examples contained therein, "provide the Commission's views on how **reasonable consumers** likely interpret certain claims."[10]

27.     The Green Guides specifically address the use of Certifications and Seals of Approval: "[A] certification or seal can deceptively imply that the certifier has evaluated a product or service using independently-developed and objectively-applied standards."[11]  Therefore, "[i]t is deceptive to misrepresent, directly or by implication, that a product, package, or service has been endorsed or

---

[8] *See* https://bpiworld.org/Labeling-Guidelines.
[9] *See generally* 16 C.F.R. § 260 – Guides for the Use of Environmental Marketing Claims.
[10] *Id.* at § 260.1(d) (emphasis added).  *See also FTC, The Green Guides, Statement of Basis and Purpose* at p. 1 ("The Guides explain how reasonable consumers likely interpret each such claim, describe the basic elements necessary to substantiate it, and present options for qualifying it to avoid deception." *Available at* https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-issues-revised-green-guides/greenguidesstatement.pdf.
[11] *Id.* at p. 99.

CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

certified by an independent third party."[12]

28.    Moreover, the Green Guides instruct:

A marketer's use of an environmental certification or seal of approval likely conveys that the product offers a general environmental benefit (see § 260.4) if the certification or seal does not convey the basis for the certification or seal, either through the name or some other means. **Because it is highly unlikely that marketers can substantiate general environmental benefit claims, marketers should not use environmental certifications or seals that do not convey the basis for the certification.**[13]

29.    In addition, "[t]o avoid deception, marketers should use clear and prominent qualifying language that clearly conveys that the certification or seal refers only to specific and limited benefits."[14]

30.    The Green Guides also provide examples of how certifications and seals of approval would be interpreted by reasonable consumers:

An advertisement for paint features a "GreenLogo" seal and the statement "GreenLogo for Environmental Excellence." This advertisement likely conveys that: (1) the GreenLogo seal is awarded by an independent, third-party certifier with appropriate expertise in evaluating the environmental attributes of paint; and (2) the product has far-reaching environmental benefits. **If the paint manufacturer awarded the seal to its own product, and no independent, third-party certifier objectively evaluated the paint using independent standards, the claim would be deceptive.** The claim would not be deceptive if the marketer accompanied the seal with clear and prominent language: (1) indicating that the marketer awarded the GreenLogo seal to its own product; and (2) clearly conveying that the award refers only to specific and limited benefits.[15]

31.    Further, according to the Green Guides' Statement of Basis and Purpose:

Commenters uniformly supported the Commission's proposed guidance that **a marketer should disclose if it bestows its own seal of approval**. Green Seal praised the Commission for identifying these seals as **potentially misleading** and recommended the FTC clarify that when using a self-certification, the **company must include its name with the statement indicating it is the company's own program** (e.g., "Meets Our Own Company Z Green Promise Program"). CRS opined that consumers likely assume that all certifications have been conducted by an independent, third party with expertise in evaluating the environmental attributes of the product. Therefore, CRS supported the proposed guidance, and asked the Commission to clarify that it applies to all logos that resemble certification marks or purport to demonstrate a product or service's environmental performance, not just self-certifications that say "certified."[16]

---

[12] 16 C.F.R. § 260.6.
[13] *Id.* (emphasis added).
[14] *Id.*
[15] *Id.* (emphasis added).
[16] *FTC, The Green Guides, Statement of Basis and Purpose* at p. 80 (emphasis added). *Available at*

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

32.    As relevant here, Defendant "awarded the [False Certification] to its own product[s], and [on information and belief] no independent, third-party certifier objectively evaluated the [Products] using independent standards."[17]

33.    Nor does the False Certification "use clear and prominent qualifying language that clearly conveys that the certification or seal refers only to specific and limited benefits."[18]  Nor does the False Certification make clear that Defendant, not a third party, awarded the certification to its own Products.[19]  Therefore, the False Certification is misleading and deceptive and therefore unlawful.

**C.    The Products Can Cause Harm to Humans (Including Children) and Pets**

34.    **Harmful Ingredients.** Contrary to the Products' Challenged Representations, the Products are not safe for pets and kids because they can cause harm to humans (including children) and pets. That is because the Products contain (in varying combinations) a number of harmful ingredients, including the following: (1) diethylene glycol ethyl ether; (2) dipropylene glycol methyl ether; (3) fragrance; (4) 1-octanesulfonic acid; (5) sodium hexametaphosphate; (6) sodium metasilicate pentahydrate; (7) sodium sulfate; and (8) tetrasodium pyrophosphate.[20]  Accordingly, the Products are not safe for humans and pets.

35.    **Diethylene glycol ethyl ether ("DEGEE")** is also known as diethylene glycol monoethyl ether; 2-(2-ethoxyethoxy)ethanol; and ethoxydiglycol. DEGEE is used in the chemical and paint industries as a solvent for, among other things, nitro cellulose, resins, and dyes.  For those Products that contain DEGEE, the percentage by weight of DEGEE in the Products ranges from <0.1% to <5%.[21]  Withing this concentration range, DEGEE (and therefore the Products) can cause

---

https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-issues-revised-green-guides/greenguidesstatement.pdf.
[17] *Id.*
[18] 16 C.F.R. § 260.6.
[19] *FTC, The Green Guides, Statement of Basis and Purpose* at p. 80 (emphasis added). *Available at* https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-issues-revised-green-guides/greenguidesstatement.pdf.
[20] The harmful ingredients contained in each Product is described in detail *infra* and in Exhibit 2 (Safety Data Sheets). In addition, other ingredients in the Products may pose a risk of harm to humans and pets; however, additional information—such as the Products' proprietary formulations are exclusively in Defendant's possession—and required to make that determination.
[21] The Products that contain DEGEE are the Cabinet & Furniture Cleaner; Cabinet & Furniture Restorer; Shine Refresher; All Floors Cleaner; All Floors Restorer; Luxury Vinyl Floor Cleaner;

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

harm to the eyes and skin when these surfaces are exposed to the Products.

36.   **Dipropylene glycol methyl ether ("DPGME")** is also known as PPG-2 methyl ether. DPGME is used as a solvent, dispersing agent, coupling agent, emollient, and fragrance. For those Products that contain DPGME, the percentage by weight in the Products ranges from 0.7% to < 1.5%.[22] Within this concentration range, DPGME (and therefore the Products) can cause harm to the eyes when exposed to the Products.

37.   **Fragrance** refers to the combination of chemicals or fragrance components in a product that gives the product its distinct scent. Fragrances have an intrinsic ability to cause sensitization by skin contact. Given human heterogeneity, the achievement of zero risk of induction of contact dermatitis from fragranced products is likely unattainable, regardless of the small amount of fragrance added to consumer products. Indeed, a sizeable segment of the American population reports adverse reactions to fragranced products, with 30.5% reporting that scented products are irritating and 19% experiencing headaches, breathing difficulties, and other problems from fragranced products. In addition, individuals with asthma and chemical sensitivity report adverse effects to scented products in higher proportions than the general public. Therefore, certain consumers exposed to these fragrances will experience some combination of eye, nose, and/or throat irritation, respiratory difficulty, possibly bronchoconstriction or asthma-like reaction, and central nervous systems reactions (e.g., dizziness, incoordination, confusion, fatigue). On information and belief, certain, if not all, of the Products contain Fragrances and therefore the Products can cause the harms described *surpa*.

38.   **1-octanesulfonic acid** is an alkane sulfonate that is used in surfactant mixtures, textile and leather auxiliaries (mercerizing), and in preparations for cleaning metal, steam jets and pickling baths. For those Products that contain 1-octanesulfonic acid, at the in-use concentration of 1-octanesulfonic acid used in the Products, 1-octanesulfonic acid (and therefore the Products) can cause harm to the eyes when exposed to the Products.[23]

---

Outdoor Color Restorer; Restorer Wipes; Wood Floor Restorer – Gloss; and Wood Floor Restorer – Satin.
[22] The Products that contain DPGME are the Cabinet & Furniture Restorer; Shine Refresher; and All Floors Restorer.
[23] The Products that contain 1-octanesulfonic acid are the Carpet & Upholstery Pet Stain Remover; and Carpet Cleaner.

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

39.    **Sodium hexametaphosphate** is an inorganic polyphosphate salt that functions as a chelating agent, corrosion inhibitor, emulsifier, sequestrant, texturizer, a scald agent, and adjuvant for pesticide chemicals. For the Product that contains sodium hexametaphosphate (Soap Scum Remover), at the in-use concentration of sodium hexametaphosphate used in the Product, sodium hexametaphosphate (and therefore the Product) can cause harm to the skin when exposed to the Product, as well as skin sensitization upon repeated exposure to the Product.

40.    **Sodium metasilicate pentahydrate** is also known as silicic acid disodium salt pentahydrate; disodium silicate pentahydrate; sodium silicate hydrate; and disodium trioxosilicate. It is used as a builder (a material that enhances or maintains the cleaning efficiency of the surfactant, principally by inactivating water hardness). For the Product that contains sodium metasilicate pentahydrate (Leather & Vinyl Cleaner), at the in-use concentration of sodium metasilicate pentahydrate used in the Product, sodium metasilicate pentahydrate (and therefore the Product) can cause harm to the eyes when exposed to the Products.

41.    **Sodium sulfate** is also known as disodium sulfate; sulfuric acid; and disodium salt. Sodium sulfate is used as a viscosity increasing agent. For those Products that contain sodium sulfate, at the in-use concentration of sodium sulfate used in the Products, sodium sulfate (and therefore the Products) can cause harm to the skin when exposed to the Products.[24]

42.    **Tetrasodium pyrophosphate** is used as a sequestrant, dispersant, deflocculant, detergent builder, and component of solid or liquid fertilizers. For the Product that contains tetrasodium pyrophosphate (Leather & Vinyl Cleaner), at the in-use concentration of tetrasodium pyrophosphate used in the Product, tetrasodium pyrophosphate (and therefore the Product) can cause harm to the eyes and mouth when exposed to the Product.

**D.    The Products' Safety Data Sheets**

43.    As described below, *Defendant's own* Safety Data Sheets ("SDSs") for the Products demonstrate each Product can cause harm to humans and pets, and are therefore not safe—contrary to the Products' Challenged Representations.

---

[24] The Products that contain sodium sulfate are the Carpet & Upholstery Pet Stain Remover; and Carpet Cleaner.

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

44.    **Hazard Communication Standard.** The Hazard Communication Standard (29 C.F.R. § 1910.1200, *et seq.*) requires that a chemical manufacturer, distributor, or importer provide a Safety Data Sheet for each hazardous chemical to downstream users to communicate information on these hazards. "Hazardous chemical means any chemical which is classified as a physical hazard or a health hazard, a simple asphyxiant, combustible dust, pyrophoric gas, or hazard not otherwise classified." 29 C.F.R. § 1910.1200(c).

45.    **General Contents of SDS.** An SDS includes information concerning the properties of each chemical; the physical, health, and environmental health hazards; protective measures; and safety precautions for handling, storing, and transporting the chemical. In addition, an SDS must provide specific minimum information as detailed in Appendix D of 29 C.F.R. § 1910.1200.

46.    **Defendant's SDS's.** Defendant created an SDS for each of the Products, a true and correct copy of which is attached hereto as Exhibit 2.[25] In each SDS, Defendant details information about the particular Product, including some of the ingredients used in the Product, and the concentration or percentage by weight of the given ingredient in the Product. Each SDS also details the physical, health, and environmental hazards posed by each Product. The following pertinent information is provided in the referenced Product's SDS:

### (1)    ALL FLOORS CLEANER[26]

**Section 2. Hazards Identification**

Other Information
- Harmful to aquatic life with long lasting effects.
- Harmful to aquatic life.

**Section 3. Composition/Information on Ingredients**
- Diethylene Glycol Ethyl Ether
- Propanediol

**Section 4. First Aid Measures**

Inhalation:
Symptoms may include respiratory tract irritation.

Eye Contact:
Symptoms may include discomfort, excess tear production, possible redness and swelling.

---

[25] *See* Exhibit 2, but note that Safety Data Sheets were not located for Products Nos. (15) Siding Restorer and (20) Wood Floor Cleaner.
[26] *See also* Exhibit 2A: (1) All Floors Cleaner

**Section 11. Toxicological Information**

Skin Contact:
Avoid contact with skin. May cause skin irritation and/or dermatitis.

Ingestion:
May be harmful if swallowed.

**Section 16. Other Information**
NFPA Health Hazard Rating: 1[27]
HMIS Health Hazard Rating: 1[28]

## (2)   ALL FLOORS RESTORER[29]

**Section 2. Hazards Identification**

Other Information
• Harmful to aquatic life with long lasting effects.
• Harmful to aquatic life.

**Section 3. Composition/Information on Ingredients**
• Diethylene Glycol Ethyl Ether
• Dipropylene Glycol Methyl Ether

**Section 4. First Aid Measures**

Inhalation:
Symptoms may include respiratory tract irritation.

Eye Contact:
Symptoms may include discomfort, excess tear production, possible redness and swelling.

**Section 11. Toxicological Information**

Skin Contact:
Avoid contact with skin. May cause skin irritation and/or dermatitis.

Ingestion:
May be harmful if swallowed.

**Section 16. Other Information**
NFPA Health Hazard Rating: 1
HMIS Health Hazard Rating: 1

[27] The National Fire Protection Association ("NFPA") developed a hazard identification system for emergency responders. A Health Rating of "1" means "Slightly Hazardous."
[28] The Hazardous Materials Identification System ("HMIS") is a numerical hazard rating system. The "Health Hazard Rating" of a material is determined by evaluating the potential for harm and relative toxicity. The Health Hazard Rating considers the toxicological properties of ingredients such as carcinogen status and permissible exposure limits. A Health Rating of "1" means Slight Health Hazard such that irritation or minor reversible injury is possible.
[29] *See also* Exhibit 2B: (2) All Floors Restorer

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

### (3)   <u>CABINET & FURNITURE CLEANER[30]</u>

**<u>Section 2. Hazards Identification</u>**

<u>Other Information</u>
- Harmful to aquatic life with long lasting effects.
- Harmful to aquatic life.

**<u>Section 3. Composition/Information on Ingredients</u>**
- Diethylene Glycol Ethyl Ether
- Ethylene Glycol

**<u>Section 4. First Aid Measures</u>**

<u>Inhalation</u>:
Symptoms may include respiratory tract irritation.

<u>Eye Contact</u>:
Symptoms may include discomfort, excess tear production, possible redness and swelling.

**<u>Section 11. Toxicological Information</u>**

<u>Skin Contact</u>:
Avoid contact with skin. May cause skin irritation and/or dermatitis.

<u>Ingestion</u>:
May be harmful if swallowed.

**<u>Section 16. Other Information</u>**
NFPA Health Hazard Rating: 1
HMIS Health Hazard Rating: 1

### (4)   <u>CABINET & FURNITURE RESTORER[31]</u>

**<u>Section 2. Hazards Identification</u>**

<u>Other Information</u>
- Harmful to aquatic life with long lasting effects.
- Harmful to aquatic life.

**<u>Section 3. Composition/Information on Ingredients</u>**
- Styrene Acrylic Polymer
- Diethylene Glycol Ethyl Ether
- Dipropylene Glycol Methyl Ether

**<u>Section 4. First Aid Measures</u>**

<u>Inhalation</u>:
Symptoms may include respiratory tract irritation.

<u>Eye Contact</u>:
Symptoms may include discomfort, excess tear production, possible redness and swelling.

**<u>Section 11. Toxicological Information</u>**

---

[30] *See also* Exhibit 2C: (3) Cabinet & Furniture Cleaner
[31] *See also* Exhibit 2D: (4) Cabinet & Furniture Restorer

21

Skin Contact:
Avoid contact with skin. May cause skin irritation and/or dermatitis.

Ingestion:
May be harmful if swallowed.

**Section 16. Other Information**
NFPA Health Hazard Rating: 1
HMIS Health Hazard Rating: 1

## (5)   CARPET & UPHOLSTERY PET STAIN REMOVER[32]

**Section 3. Composition/Information on Ingredients**
- Viable Bacterial Cultures
- 1-Octanesulfonic acid, sodium salt
- Sodium sulfate

**Section 4. First Aid Measures**

Inhalation:
Symptoms may include respiratory tract irritation.

Eye Contact:
Symptoms may include discomfort, excess tear production, possible redness and swelling.

**Section 11. Toxicological Information**

Skin Contact:
Prolonged contact may cause redness and irritation. Repeated or prolonged skin contact may cause allergic reactions with susceptible persons.

Chronic toxicity:
Repeated contact may cause allergic reactions in very susceptible persons.  Avoid repeated exposure.

**Section 15. Regulatory Information**

SARA 311/312 Hazard Categories[33]
Acute health hazard:  **Yes**

**Section 16. Other Information**
NFPA Health Hazard Rating: 1
HMIS Health Hazard Rating: 1

---

[32] *See also* Exhibit 2E: (5) Carpet & Upholstery Pet Stain Remover
[33] The Superfund Amendments and Reauthorization Act of 1986 is more commonly known as SARA Title III. This Act reauthorized the Superfund regulations as well as established community right-to-know regulations and emergency response requirements. Under sections 311/312, EPA defined five categories of hazardous materials, including "Immediate (Acute) Health Hazards." This category includes highly toxic materials, toxic materials, corrosives, irritants, sensitizers and other hazardous materials that exhibit an adverse effect with short term exposure.

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

(6)     **CARPET CLEANER**[34]

**Section 3. Composition/Information on Ingredients**
- Viable Bacterial Cultures
- 1-Octanesulfonic acid, sodium salt
- Sodium sulfate

**Section 4. First Aid Measures**

Inhalation:
Symptoms may include respiratory tract irritation.

Eye Contact:
Symptoms may include discomfort, excess tear production, possible redness and swelling.

**Section 11. Toxicological Information**

Skin Contact:
Prolonged contact may cause redness and irritation. Repeated or prolonged skin contact may cause allergic reactions with susceptible persons.

Chronic toxicity:
Repeated contact may cause allergic reactions in very susceptible persons.  Avoid repeated exposure.

**Section 15. Regulatory Information**

SARA 311/312 Hazard Categories
Acute health hazard:  **Yes**

**Section 16. Other Information**
NFPA Health Hazard Rating: 1
HMIS Health Hazard Rating: 1

(7)     **GRANITE & STONE CLEANER**[35]

**Section 3. Composition/Information on Ingredients**
- Isopropylidene Glycol

**Section 4. First Aid Measures**

Inhalation:
Symptoms may include respiratory tract irritation.

Eye Contact:
Symptoms may include discomfort, excess tear production, possible redness and swelling.

**Section 11. Toxicological Information**

Skin Contact:
Prolonged contact may cause redness and irritation. Repeated or prolonged skin contact may cause allergic reactions with susceptible persons.

Chronic Toxicity

---

[34] *See also* Exhibit 2F: (6) Carpet Cleaner
[35] *See also* Exhibit 2G: (7) Granite & Stone Cleaner

Repeated contact may cause allergic reactions in very susceptible persons. Avoid repeated exposure.

**Section 15. Regulatory Information**

SARA 311/312 Hazard Categories
Acute health hazard:  **Yes**

**Section 16. Other Information**
NFPA Health Hazard Rating: 1
HMIS Health Hazard Rating: 1

### (8)    GROUT DEEP CLEANER[36]

**Section 4. First Aid Measures**

Inhalation:
Symptoms may include respiratory tract irritation.

Eye Contact:
Symptoms may include discomfort, excess tear production, possible redness and swelling.

**Section 8. Exposure Controls/Personal Protection**

Skin and Body Protection
Prolonged contact may cause redness and irritation

**Section 11. Toxicological Information**

Inhalation:
Avoid breathing vapors or mists. May cause irritation of respiratory tract.

Eye Contact:
Avoid contact with eyes. May cause slight irritation.

Skin Contact:
Avoid contact with skin. Prolonged or repeated contact may dry skin and cause irritation.

**Section 16. Other Information**
NFPA Health Hazard Rating: 1
HMIS Health Hazard Rating: 1

### (9)    LEATHER & VINYL CLEANER[37]

**Section 2. Hazard Identification**

Health Hazards: May be irritating to the eyes upon contact. Prolonged contact may irritate skin.

EU Labeling and Classification:
Hazard Classification: Irritant
Risk Phrases: Irritating to skin and eyes

---

[36] *See also* Exhibit 2H: (8) Grout Deep Cleaner
[37] *See* Exhibit 2I: (9) Leather & Vinyl Cleaner.  The SDS located for this Product was issued in 2011, and therefore it is not clear whether the information is still applicable.

24

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

Health Hazards or Risks from Exposure:
Acute: This substance may be irritating to eyes upon contact. Prolonged exposure to skin may cause irritation. May cause gastrointestinal irritation if swallowed.

**Section 3. Composition/Information on Ingredients**
- Tetrasodium Pyrophosphate
- Sodium Metasilicate Pentahydrate

**Section 4. First Aid Measures**

Eye Contact:
If this product contacts the eyes, immediately flush the eyes with large amounts of water. Get medical attention if irritation occurs.

Medical Conditions Aggravated by Exposure:
Pre-existing skin problems may be aggravated by prolonged contact.

**Section 5. Fire-Fighting Measures**
NFPA Health Hazard Rating: 1

**Section 11. Toxicological Information**

Irritancy of Product:
Airborne mist of this product can irritate eyes.

Reproductive Toxicity:
The components of this product are reported to produce reproductive effects in animal studies.

**Section 15. Regulatory Information**

SARA Title III Section 312 Hazard Category (40 CFR 311/312)
Acute Health [Hazard]: **Yes.**

European Economic Community Information:
Hazard Classification: Irritant
Risk Phrases: Irritating to skin and eyes.

### (10)   LUXURY VINYL FLOOR CLEANER[38]

**Section 2. Hazards Identification**

Other Information
- Harmful to aquatic life with long lasting effects.
- Harmful to aquatic life.

**Section 3. Composition/Information on Ingredients**

- Diethylene Glycol Ethyl Ether
- Propanediol

**Section 4. First Aid Measures**

Inhalation:
Symptoms may include respiratory tract irritation.

---

[38] *See* Exhibit 2J: (10) Luxury Vinyl Floor Cleaner

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

Eye Contact:
Symptoms may include discomfort, excess tear production, possible redness and swelling.

**Section 11. Toxicological Information**

Skin Contact:
Avoid contact with skin. May cause skin irritation and/or dermatitis.

Ingestion:
May be harmful if swallowed.

**Section 16. Other Information**
NFPA Health Hazard Rating: 1
HMIS Health Hazard Rating: 1

### (11)   MARBLE, GRANITE & STONE FLOOR CLEANER[39]

**Section 3. Composition/Information on Ingredients**
- Butyl 3-Hydroxybutyrate

### (12)   OUTDOOR COLOR RESTORER[40]

**Section 2. Hazards Identification**

Other Information
- Harmful to aquatic life with long lasting effects.
- Harmful to aquatic life.

**Section 3. Composition/Information on Ingredients**
- Diethylene Glycol Ethyl Ether
- Triethylamine

**Section 4. First Aid Measures**

Inhalation:
Symptoms may include respiratory tract irritation.

Eye Contact:
Symptoms may include discomfort, excess tear production, possible redness and swelling.

**Section 11. Toxicological Information**

Skin Contact:
Avoid contact with skin. May cause skin irritation and/or dermatitis.

Ingestion:
May be harmful if swallowed.

**Section 16. Other Information**
NFPA Health Hazard Rating: 1
HMIS Health Hazard Rating: 1

---

[39] *See* Exhibit 2K: (11) Marble, Granite & Stone Floor Cleaner.  The SDS located for this Product was issued in 2015, and therefore it is not clear whether and to what extent the information is still applicable. In addition, it appears the Product was only assessed for "significant" health effects or "critical" hazards.
[40] *See* Exhibit 2L: (12) Outdoor Color Restorer

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

### (13)    RESTORER WIPES[41]

**Section 2. Hazards Identification**

<u>Other Information</u>
- Harmful to aquatic life with long lasting effects.
- Harmful to aquatic life.

**Section 3. Composition/Information on Ingredients**
- Diethylene Glycol Ethyl Ether
- Triethylamine

**Section 4. First Aid Measures**

<u>Inhalation:</u>
Symptoms may include respiratory tract irritation.

<u>Eye Contact:</u>
Symptoms may include discomfort, excess tear production, possible redness and swelling.

**Section 11. Toxicological Information**

<u>Skin Contact:</u>
Avoid contact with skin. May cause skin irritation and/or dermatitis.

<u>Ingestion:</u>
May be harmful if swallowed.

**Section 16. Other Information**
NFPA Health Hazard Rating: 1
HMIS Health Hazard Rating: 1

### (14)    SHINE REFRESHER[42]

**Section 2. Hazards Identification**

<u>Other Information</u>
- Harmful to aquatic life with long lasting effects.
- Harmful to aquatic life.

**Section 3. Composition/Information on Ingredients**
- Styrene Acrylic Polymer
- Diethylene Glycol Ethyl Ether
- Dipropylene Glycol Methyl Ether
- Oxidized Polyolefin Wax

**Section 4. First Aid Measures**

<u>Inhalation:</u>
Symptoms may include respiratory tract irritation.

<u>Eye Contact:</u>
Symptoms may include discomfort, excess tear production, possible redness and swelling.

---

[41] *See* Exhibit 2M: (13) Restorer Wipes
[42] *See* Exhibit 2N: (14) Shine Refresher

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

**Section 11. Toxicological Information**

Skin Contact:
Avoid contact with skin. May cause skin irritation and/or dermatitis.

Ingestion:
May be harmful if swallowed.

**Section 16. Other Information**
NFPA Health Hazard Rating: 1
HMIS Health Hazard Rating: 1

(16)   **SOAP SCUM REMOVER**[43]

**Section 3. Composition/Information on Ingredients**
- Sodium Hexametaphosphate

**Section 4. First Aid Measures**

Inhalation:
Symptoms may include respiratory tract irritation.

Eye Contact:
Symptoms may include discomfort, excess tear production, possible redness and swelling.

**Section 8. Exposure Controls/Personal Protection**

Skin and Body Protection
Prolonged contact may cause redness and irritation

**Section 11. Toxicological Information**

Skin Contact:
Prolonged contact may cause redness and irritation

**Section 16. Other Information**
NFPA Health Hazard Rating: 1
HMIS Health Hazard Rating: 1

(17)   **STAINLESS STEEL CLEANER & POLISH**[44]

**Section 2. Composition/Information on Ingredients**
- Linear Alcohol Ethoxylate
- Detergent Blend
- 2-Butoxyethanol
- D-Limonene
- Dye
- Fragrance

---

[43] *See* Exhibit 2P: (16) Soap Scum Remover
[44] *See* Exhibit 2Q: (17) Stainless Steel Cleaner & Polish.  The date of the SDS for this Product is unknown.

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

**Section 3. Emergency Overview**

Health Effects: Eyes
This product may cause slight eye irritation

Health Effects: Skin
May cause slight irritation

Health Effects: Inhalation
High vapor or aerosol mist concentrations may be irritating to the nose, throat and upper respiratory tract.

Health Effects: Ingestion
Ingestion of large amounts may produce gastrointestinal disturbances including irritation, nausea and diarrhea.

**Section 16. Other Information**
HMIS Health Hazard Rating: 1

## (18)   STONE, TILE & LAMINATE FLOOR CLEANER[45]

**Section 3. Composition/Information on Ingredients**
- Isopropylidene Glycol

**Section 4. First Aid Measures**

Inhalation:
Symptoms may include respiratory tract irritation.

Eye Contact:
Symptoms may include discomfort, excess tear production, possible redness and swelling.

**Section 11. Toxicological Information**

Skin Contact:
Prolonged contact may cause redness and irritation. Repeated or prolonged skin contact may cause allergic reactions with susceptible persons.

Chronic Toxicity
Repeated contact may cause allergic reactions in very susceptible persons. Avoid repeated exposure.

**Section 15. Regulatory Information**

SARA 311/312 Hazard Categories
Acute health hazard:  **Yes**

**Section 16. Other Information**
NFPA Health Hazard Rating: 1
HMIS Health Hazard Rating: 1

[45] *See* Exhibit 2R: (18) Stone, Tile & Laminate Floor Cleaner

### (19)   TILE & GROUT EVERYDAY CLEANER[46]

**Section 3. Composition/Information on Ingredients**
- Viable Bacterial Cultures

**Section 4. First Aid Measures**

Inhalation:
Symptoms may include respiratory tract irritation.

Eye Contact:
Symptoms may include discomfort, excess tear production, possible redness and swelling.

**Section 11. Toxicological Information**

Skin Contact:
Prolonged contact may cause redness and irritation.

**Section 16. Other Information**
NFPA Health Hazard Rating: 1
HMIS Health Hazard Rating: 1

### (21)   WOOD FLOOR RESTORER – GLOSS[47]

**Section 2. Hazards Identification**

Other Information
- Harmful to aquatic life with long lasting effects.
- Harmful to aquatic life.

**Section 3. Composition/Information on Ingredients**
- Diethylene Glycol Ethyl Ether
- Triethylamine

**Section 4. First Aid Measures**

Inhalation:
Symptoms may include respiratory tract irritation.

Eye Contact:
Symptoms may include discomfort, excess tear production, possible redness and swelling.

**Section 11. Toxicological Information**

Skin Contact:
Avoid contact with skin. May cause skin irritation and/or dermatitis.

Ingestion:
May be harmful if swallowed.

**Section 16. Other Information**
NFPA Health Hazard Rating: 1

---

[46] *See* Exhibit 2S: (19) Tile & Grout Everyday Cleaner
[47] *See* Exhibit 2U: (21) Wood Restorer—Gloss.  In addition, on the back label of this Product, in small, hard-to-read print, Defendant admits the Product is an "Eye irritant." Defendant also admits that "[i]ngestion may cause nausea, vomiting, diarrhea and mucosal irritation."

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

HMIS Health Hazard Rating: 1

### (22)   WOOD FLOOR RESTORER – SATIN[48]

**Section 2. Hazards Identification**

Other Information
- Harmful to aquatic life with long lasting effects.
- Harmful to aquatic life.

**Section 3. Composition/Information on Ingredients**
- Diethylene Glycol Ethyl Ether
- Triethylamine

**Section 4. First Aid Measures**

Inhalation:
Symptoms may include respiratory tract irritation.

Eye Contact:
Symptoms may include discomfort, excess tear production, possible redness and swelling.

**Section 11. Toxicological Information**

Skin Contact:
Avoid contact with skin. May cause skin irritation and/or dermatitis.

Ingestion:
May be harmful if swallowed.

**Section 16. Other Information**
NFPA Health Hazard Rating: 1
HMIS Health Hazard Rating: 1

**E.   Plaintiff and Reasonable Consumers Were Misled by the Products' Challenged Representations**

47.    Labeling the Products with the Challenged Representations, when the Products can cause harm to humans and pets and/or is not certified by an independent third-party, is wholly misleading and deceptive.

48.    **Material.** The Challenged Representations were and are material to reasonable consumers, including Plaintiff, in deciding whether to buy the Products.

49.    **Reliance.** Plaintiff and reasonable consumers relied on the Challenged Representations in deciding to buy the Products.

50.    **Consumers Lack Knowledge of Falsity.** At the time of purchase, Plaintiff and

---

[48] *See* Exhibit 2V: (22) Wood Restorer—Satin.  In addition, on the back label of this Product, in small, hard-to-read print, Defendant admits the Product is an "Eye irritant." Defendant also admits that "[i]ngestion may cause nausea, vomiting, diarrhea and mucosal irritation."

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

similarly situated consumers did not know, and had no reason to know, that the Challenged Representations were false, misleading, deceptive, and unlawful as set forth herein.

51. **Misrepresentation/Omission.** The Safety Representation materially misrepresented that the Products are safe for humans (including children) and pets when the Products can cause harm to humans and pets. Furthermore, the False Certification materially misrepresented that the Products are certified by an independent third party when, in fact, the Products were not.

52. **Defendant's Knowledge.** Defendant knew, or should have known, that the Challenged Representations were false, misleading, deceptive, and unlawful, at the time that it advertised the Products the Products using the Challenged Representations, and Defendant intentionally and deliberately used the Challenged Representations on the Products' labeling, packaging, and advertising to cause Plaintiff and similarly situated consumers to buy the Products.

53. **Detriment.** Plaintiff and similarly situated consumers would not have purchased the Products if they had known the truth. Accordingly, based on Defendant's material misrepresentations and omissions, reasonable consumers, including Plaintiff, paid money for the Products to their detriment.

**F.** <u>**The Products Are Substantially Similar**</u>

54. As described herein, Plaintiff purchased Product Nos. (16) Rejuvenate Soap Scum Remover and (21) Rejuvenate Wood Floor Restorer – Gloss (collectively, the "**Purchased Products**"). The additional Products Nos. (1) Rejuvenate All Floors Cleaner; (2) Rejuvenate All Floors Restorer; (3) Rejuvenate Cabinet & Furniture Cleaner; (4) Rejuvenate Cabinet & Furniture Restorer; (5) Rejuvenate Carpet & Upholstery Pet Stain Remover; (6) Rejuvenate Carpet Cleaner; (7) Rejuvenate Granite & Stone Cleaner; (8) Rejuvenate Grout Deep Cleaner; (9) Rejuvenate Leather & Vinyl Cleaner; (10) Rejuvenate Luxury Vinyl Floor Cleaner; (11) Rejuvenate Marble, Granite & Stone Floor Cleaner; (12) Rejuvenate Outdoor Color Restorer; (13) Rejuvenate Restorer Wipes; (14) Rejuvenate Shine Refresher; (15) Rejuvenate Siding Restorer; (17) Rejuvenate Stainless Steel Cleaner & Polish; (18) Rejuvenate Stone, Tile & Laminate Floor Cleaner; (19) Rejuvenate Tile & Grout Everyday Cleaner; (20) Rejuvenate Wood Floor Cleaner; and (22) Rejuvenate Wood Floor Restorer – Satin) (collectively, the "**Unpurchased Products**") are

substantially similar to the Purchased Products.

    a.  **Defendant.**  All Products are manufactured, distributed, sold, marketed, advertised, labeled, and packaged by Defendant.

    b.  **Brand.**  All Products are sold under the Rejuvenate brand name.

    c.  **Marketing Demographics.**  All Products are marketed directly to consumers for personal or household use.

    d.  **Purpose.** All Products are household cleaning products.

    e.  **Misrepresentations.**  All Products contain the exact same exact Challenged Representation prominently and uniformly in the same location on the Product—the lower right portion of the front label.[49]

    f.  **Packaging.**  The Products are packaged in similar packaging using similar color schemes (prominently displaying purple).[50]

    g.  **Key Ingredients.**  All Products contain harmful ingredients.

    h.  **Misleading Effect.**  The misleading effect of the Products' labels is the same for all Products—Plaintiff and similarly situated reasonable consumers are misled into purchasing the Products in reliance on the Challenged Representations.

## VI.

## <u>CLASS ACTION ALLEGATIONS</u>

55.    **Class Definition.** Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself and all others similarly situated, and as members of the Classes defined as follows:

> All residents of the United States who, within the applicable statute of limitations periods, purchased the Products ("**Nationwide Class**"); and

> All residents of California who, within four years prior to the filing of this Complaint, purchased the Products ("**California Subclass**").

---

[49] The only exceptions are Product No. 13, the Restorer Wipes, and Product No. Stainless Steel Cleaner & Polish.  The Wipes prominently displays the Challenged Representations on the front label, next to the brand name "Rejuvenate", in the upper right portion.  *See* Exhibit 1M (Wipes). The Polish is shaped in a round tube or canister and the Challenged Representation is displayed on what appears to be the front-center portion of the label, immediately next to the "Rejuvenate" brand name.  *See* Exhibit 1Q (Steel Cleaner).

[50] *See* Exhibit 1.

CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

("Nationwide Class" and "California Subclass" are collectively referred to as the "**Class**").

56.     **Class Definitions Exclusions.** Excluded from the Class are: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (iv) all persons presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (v) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

57.     **Reservation of Rights to Amend the Class Definition.** Plaintiff reserves the right to amend or otherwise alter the class definitions presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

58.     **Numerosity:** Members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Nationwide Class consists of tens of thousands of purchasers (if not more) dispersed throughout the United States, and the California Subclass likewise consists of thousands of purchasers (if not more) dispersed throughout the State of California. Accordingly, it would be impracticable to join all members of the Class before the Court.

59.     **Common Questions Predominate:** There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. Included within the common questions of law or fact are:

a.     Whether Defendant engaged in unlawful, unfair or deceptive business practices by advertising and selling the Products;

b.     Whether Defendant's conduct of advertising and selling the Products as safe for kids and pets when they are not constitutes an unfair method of competition, or unfair or deceptive act or practice, in violation of Civil Code section 1750, *et seq*.;

c.     Whether Defendant's conduct of advertising and selling the Products with the False Certification constitutes an unfair method of competition, or unfair or deceptive act or practice, in violation of Civil Code section 1750, *et seq*.;

d.     Whether Defendant used deceptive representations in connection with the sale of the Products in violation of Civil Code section 1750, *et seq*.;

e.     Whether Defendant represented the Products have characteristics or quantities that they do not have in violation of Civil Code section 1750, *et seq*.;

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

f.     Whether Defendant advertised the Products with intent not to sell them as advertised in violation of Civil Code section 1750, *et seq.*;

g.     Whether Defendant's labeling and advertising of the Products are untrue or misleading in violation of Business and Professions Code section 17500, *et seq.*;

h.     Whether Defendant knew or by the exercise of reasonable care should have known its labeling and advertising was and is untrue or misleading in violation of Business and Professions Code section 17500, *et seq.*;

i.     Whether Defendant's conduct is an unfair business practice within the meaning of Business and Professions Code section 17200, *et seq.*;

j.     Whether Defendant's conduct is a fraudulent business practice within the meaning of Business and Professions Code section 17200, *et seq.*;

k.     Whether Defendant's conduct is an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq.*;

l.     Whether Defendant's advertising and labeling of the Products constitute misleading environmental marketing claims in violation of California Business and Professions Code Section 17580.5;

m.     Whether Defendant's advertising and labeling of the Products violates the Federal Hazardous Substances Act, 15 U.S.C. 1261, *et seq.*;

n.     Whether Plaintiff and the Class paid more money for the Products than they actually received;

o.     How much more money Plaintiff and the Class paid for the Products than they actually received;

p.     Whether Defendant's conduct constitutes breach of express warranty;

q.     Whether Plaintiff and the Class are entitled to injunctive relief;

r.     Whether Defendant was unjustly enriched by its unlawful conduct;

s.     Whether Plaintiff and the Class have sustained damages as a result of Defendant's unlawful conduct; and

t.     The proper measure of damages sustained by Plaintiff and Class Members.

60.     **Typicality**:  Plaintiff's claims are typical of the claims of the Class Members he seeks to represent because Plaintiff, like the Class Members, purchased Defendant's misleading and deceptive Products.   Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiff and the Class sustained similar injuries arising out of Defendant's conduct.  Plaintiff's and Class Members' claims arise from the same practices and course of conduct and are based on the same legal theories.

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

61.    **Adequacy**: Plaintiff is an adequate representative of the Class he seeks to represent because his interests do not conflict with the interests of the Class Members Plaintiff seeks to represent. Plaintiff will fairly and adequately protect Class Members' interests and has retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

62.    **Superiority and Substantial Benefit:** A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

a.    The claims presented in this case predominate over any questions of law or fact, if any exist at all, affecting any individual member of the Class;

b.    Absent a Class, the members of the Class will continue to suffer damage and Defendant's unlawful conduct will continue without remedy while Defendant profits from and enjoys its ill-gotten gains;

c.    Given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

d.    When the liability of Defendant has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

e.    This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and Class Members can seek redress for the harm caused to them by Defendant.

63.    **Inconsistent Rulings.** Because Plaintiff seeks relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant.

64.    **Injunctive/Equitable Relief.** The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

65. **Manageability.** Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## VII.

## CAUSES OF ACTION

### COUNT ONE

**Violation of California Unfair Competition Law**

**(Cal. Bus. & Prof. Code §§ 17200, *et seq.*)**

**(*On Behalf of the California Subclass*)**

66. **Incorporation by reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

67. **California Subclass.** This cause of action is brought pursuant to Business and Professions Code Section 17200, *et seq.*, on behalf of Plaintiff and a California Subclass who purchased the Products within the applicable statute of limitations.

68. **False Advertising Claims.** Defendant, in its advertising and packaging of the Products, made false and misleading statements and fraudulent omissions regarding the quality and characteristics of the Products—specifically, the Safety Representation and the False Certification—despite the fact the Products are not safe and can cause harm to humans and pets. Such claims and omissions appear on the label and packaging of the Products, which are sold at retail stores, point-of-purchase displays, as well as Defendant's official website, and other retailers' advertisements that have adopted Defendant's advertisements.

69. **Defendant's Deliberately False and Fraudulent Marketing Scheme.** Defendant does not have any reasonable basis for the claims about the Products made in Defendant's advertising and on Defendant's packaging or labeling because the Products can cause harm to humans and pets. Defendant knew and knows that the Products are not safe, though Defendant intentionally advertised and marketed the Products to deceive reasonable consumers into believing that Products are safe.

70. **False Advertising Claims Cause Purchase of Products.** Defendant's labeling and advertising of the Products led to, and continues to lead to, reasonable consumers, including Plaintiff, believing that the Products are safe for humans and pets.

71. **Injury in Fact.** Plaintiff and the California Subclass have suffered injury in fact and have lost money or property as a result of and in reliance upon Defendant's False Advertising Claims—namely Plaintiff and the California Subclass lost the purchase price for the Products they bought from the Defendant.

72. **Conduct Violates the UCL.** Defendant's conduct, as alleged herein, constitutes unfair, unlawful, and fraudulent business practices pursuant to California Business & Professions Code Section 17200, *et seq.* (the **"UCL"**). The UCL prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising." Cal. Bus & Prof. Code § 17200. In addition, Defendant's use of various forms of advertising media to advertise, call attention to, or give publicity to the sale of goods or merchandise that are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of Business and Professions Code Sections 17200 and 17531, which advertisements have deceived and are likely to deceive the consuming public, in violation of Business and Professions Code Section 17200.

73. **No Reasonably Available Alternatives/Legitimate Business Interests.** Defendant failed to avail itself of reasonably available, lawful alternatives to further its legitimate business interests.

74. **Business Practice.** All of the conduct alleged herein occurred and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern, practice and/or generalized course of conduct, which will continue on a daily basis until Defendant voluntarily alters its conduct or it is otherwise ordered to do so.

75. **Injunction.** Pursuant to Business and Professions Code Sections 17203 and 17535, Plaintiff and the members of the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of labeling and advertising the sale and use

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

of the Products. Likewise, Plaintiff and the members of the California Subclass seek an order requiring Defendant to disclose such misrepresentations, and to preclude Defendant's failure to disclose the existence and significance of said misrepresentations.

61.   **Causation/Damages.** As a direct and proximate result of Defendant's misconduct in violation of the UCL, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of the UCL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the California Subclass for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

76.   **Punitive Damages.** Plaintiff seeks punitive damages pursuant to this cause of action for violation of the UCL on behalf of Plaintiff and the applicable class. Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving.  Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was, at all times, aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff.  Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct.  Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights.  Defendant's misconduct is fraudulent as Defendant intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers.  The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

**A.    "Unfair" Prong**

77.    **Unfair Standard.** Under the UCL, a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California,* 142 Cal. App. 4th 1394, 1403 (2006).

78.    **Injury.** Defendant's action of mislabeling the Products with the Safety Representation and the False Certification does not confer any benefit to consumers; rather, doing so causes injuries to consumers, who do not receive products commensurate with their reasonable expectations, overpay for the Products, and receive Products of lesser standards than what they reasonably expected to receive. Consumers cannot avoid any of the injuries caused by Defendant's deceptive labeling and advertising of the Products. Accordingly, the injuries caused by Defendant's deceptive labeling and advertising outweigh any benefits.

79.    **Balancing Test.** Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code Section 17200. They "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152, 1169 (9th Cir. 2012).

80.    **No Utility.** Here, Defendant's conduct of labeling the Products with the Safety Representation and the False Certification when the Products can cause harm to humans and pets has no utility and financially harms purchasers. Thus, the utility of Defendant's conduct is vastly outweighed by the gravity of harm.

81.    **Legislative Declared Policy.** Some courts require that "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.,* 504 F. 3d 718, 735 (9th Cir. 2007).

82.    **Unfair Conduct.** Defendant's labeling and advertising of the Products, as alleged herein, is false, deceptive, misleading, and unreasonable, and constitutes unfair conduct. Defendant knew or should have known of its unfair conduct. Defendant's misrepresentations constitute an unfair business practice within the meaning of California Business and Professions Code Section 17200.

83.     **Reasonably Available Alternatives.** There existed reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Products with the Safety Representation and the False Certification.

84.     **Defendant's Wrongful Conduct.** All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

85.     **Injunction.** Pursuant to Business and Professions Code Sections 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of labeling the Products with the Safety Representation and the False Certification.

86.     **Causation/Damages.** Plaintiff and the California Subclass have suffered injury in fact and have lost money as a result of Defendant's unfair conduct. Plaintiff and the California Subclass paid an unwarranted premium for these Products. Specifically, Plaintiff and the California Subclass paid for Products that can harm humans and pets. Plaintiff and the California Subclass would not have purchased the Products, or would have paid substantially less for the Products, if they had known that the Products' advertising and labeling were deceptive. Accordingly, Plaintiff seeks damages, restitution, and/or disgorgement of ill-gotten gains pursuant to the UCL.

**B.     "Fraudulent" Prong**

87.     **Fraud Standard.** The UCL considers conduct fraudulent (and prohibits said conduct) if it is likely to deceive members of the public. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992).

88.     **Fraudulent & Material Challenged Representations.** Defendant used the Safety Representation and the False Certification with the intent to sell the Products to consumers, including Plaintiff and the California Subclass. The Challenged Representations are false and Defendant knew or should have known of their falsity. The Challenged Representations are likely to deceive consumers into purchasing the Products because they are material to the average, ordinary, and reasonable consumer.

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

89.     **Fraudulent Business Practice.** As alleged herein, the misrepresentations by Defendant constitute a fraudulent business practice in violation of California Business & Professions Code Section 17200.

90.     **Reasonable and Detrimental Reliance.** Plaintiff and the California Subclass reasonably and detrimentally relied on the material and false Challenged Representations to their detriment in that they purchased the Products.

91.     **Injunction.** Pursuant to Business and Professions Code Sections 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their practice of labeling the Products with the Safety Representation and the False Certification.

92.     **Causation/Damages.** Plaintiff and the California Subclass have suffered injury in fact and have lost money as a result of Defendant's fraudulent conduct. Plaintiff paid an unwarranted premium for the Products.  Specifically, Plaintiff and the California Subclass paid for products that they believed were safe when, in fact, they can cause harm to humans and pets. Plaintiff and the California Subclass would not have purchased the Products if they had known the truth. Accordingly, Plaintiff seeks damages, restitution, and/or disgorgement of ill-gotten gains pursuant to the UCL.

**C.     "Unlawful" Prong**

93.     **Unlawful Standard.** The UCL identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.,* 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

94.     **Violations of CLRA and FAL.** Defendant's labeling of the Products, as alleged herein, violates California Civil Code sections 1750, *et seq.* (the **CLRA**) and California Business and Professions Code sections 17500, *et seq.* (the **FAL**) as set forth below in the sections regarding those causes of action.

95.     **Unlawful Conduct.** Defendant's packaging, labeling, and advertising of the Products, as alleged herein, are false, deceptive, misleading, and unreasonable, and constitute unlawful conduct. Defendant knew or should have known of its unlawful conduct.

96. **Violation of Cal. Bus. & Prof. § 17580.5.** Additionally, Defendant's misrepresentations constitute violations of California Business and Professions Code Section 17580.5, which provides that it is "unlawful for any person to make any untruthful, deceptive, or misleading environmental marketing claim, whether explicit or implied."

97. **Injunction.** Pursuant to Business and Professions Code Section 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of false and deceptive advertising of the Products.

98. **Causation/Damages.** Plaintiff and the California Subclass have suffered injury in fact and have lost money as a result of Defendant's unlawful conduct. Plaintiff and the California Subclass paid an unwarranted premium for the Products. Plaintiff and the California Subclass would not have purchased the Products if they had known that Defendant purposely deceived consumers into believing that the Products are safe. Accordingly, Plaintiff seeks damages, restitution, and/or disgorgement of ill-gotten gains pursuant to the UCL.

## COUNT TWO

### Violation of California False Advertising Law

### (Cal. Bus. & Prof. Code §§ 17500, *et seq.*)

### (*On Behalf of the California Subclass*)

99. **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

100. **California Subclass.** Plaintiff brings this claim individually and on behalf of the California Subclass who purchased the Products within the applicable statute of limitations.

101. **FAL Standard.** The False Advertising Law, codified at Cal. Bus. & Prof. Code section 17500, *et seq.*, prohibits "unfair, deceptive, untrue or misleading advertising[.]"

62. **False & Material Challenged Representations Disseminated to Public.** Defendant violated section 17500 when it advertised and marketed the Products through the unfair, deceptive, untrue, and misleading Safety Representation and False Certification disseminated to the public through the Product's labeling/packaging and advertising. These representations were false because the Products did not conform to them. The representations were material because they are likely to

mislead a reasonable consumer into purchasing the Products.

102.   **Knowledge.** In making and disseminating the representations alleged herein, Defendant knew or should have known that the representations were untrue or misleading, and acted in violation of § 17500.

103.   **Intent to sell.** Defendant's Challenged Representations were specifically designed to induce reasonable consumers, like Plaintiff and the California Subclass, to purchase the Products.

104.   **Causation/Damages.** As a direct and proximate result of Defendant's misconduct in violation of the FAL, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of the FAL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the California Subclass for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

105.   **Punitive Damages.** Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed,

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

## COUNT THREE

### Violation of California Consumers Legal Remedies Act

### (Cal. Civ. Code §§ 1750, *et seq.*)

### (*On Behalf of the California Subclass*)

106. **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

107. **California Subclass.** Plaintiff brings this claim individually and on behalf of the California Subclass who purchased the Products within the applicable statute of limitations.

63. **CLRA Standard.** Plaintiff brings this action pursuant to California's Consumers Legal Remedies Act (**"CLRA"**), codified at California Civil Code sections 1750, *et seq.* The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

108. **Goods/Services.** The Products are "goods," as defined by the CLRA in California Civil Code §1761(a).

109. **Defendant.** Defendant is a "person," as defined by the CLRA in California Civil Code §1761(c).

110. **Consumers.** Plaintiff and members of the California Subclass are "consumers," as defined by the CLRA in California Civil Code §1761(d).

111. **Transactions.** The purchase of the Products by Plaintiff and members of the California Subclass are "transactions" as defined by the CLRA under California Civil Code section 1761(e).

112. **Violations of the CLRA.** Defendant violated the following sections of the CLRA by selling the Products to Plaintiff and the California Subclass through the false, misleading, deceptive, and fraudulent Challenged Representations:

a. Section 1770(a)(5) by representing that the Products have "characteristics, . . .

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

uses [or] benefits . . . which [they] do not have".

    b.   Section 1770(a)(7) by representing that the Products "are of a particular standard, quality, or grade . . . [when] they are of another".

    c.   Section 1770(a)(9) by advertising the Products "with [the] intent not to sell them as advertised".

113.   **Knowledge.** Defendant's uniform and material representations and omissions regarding the Products were likely to deceive, and Defendant knew or should have known that its representations and omissions were untrue and misleading.

114.   **Malicious.** Moreover, Defendant's conduct is malicious, fraudulent, and wanton in that Defendant intentionally misled and withheld material information from consumers to increase the sale of the Products.

115.   **Plaintiff Could Not Have Avoided Injury.** Plaintiff and members of the California Subclass could not have reasonably avoided such injury.  Plaintiff and members of the California Subclass were unaware of the existence of the facts that Defendant suppressed and failed to disclose; and Plaintiff and members of the California Subclass would not have purchased the Products and/or would have purchased them on different terms had they known the truth.

64.   **Causation/Reliance/Materiality.** Plaintiff and the California Subclass suffered harm as a result of Defendant's violations of the CLRA because they relied on the Challenged Representations in deciding to purchase the Products.  The Challenged Representations were a substantial factor.  The Challenged Representations were material because a reasonable consumer would consider them important in deciding whether to purchase the Products.

116.   **Injunction.** Given that Defendant's conduct violated California Civil Code section 1780, Plaintiff and members of the California Subclass are entitled to seek and seek injunctive relief to put an end to Defendant's violations of the CLRA. Plaintiff has no adequate remedy at law. Without equitable relief, Defendant's unfair and deceptive practices will continue to harm Plaintiff and the Class.

117.   **CLRA Notice.** Concurrent or around the time of the filing of this complaint, pursuant to California Civil Code section 1782, Plaintiff, on Plaintiff's behalf and on behalf of members of

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

the Class, notified Defendant of its violations of the California Consumers Legal Remedies Act. At the appropriate time, Plaintiff will amend the operative complaint to seek damages pursuant to the CLRA, in addition to equitable and injunctive relief, and request that this Court enter such orders or judgments as may be necessary to restore to any person in interest any money that may have been acquired in violation of the CLRA, and for such other relief as is provided under California Civil Code section 1780.

118.   **Causation/Damages.**  As a direct and proximate result of Defendant's misconduct in violation of the CLRA, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial.

119.   **Punitive Damages.**  Defendants' unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law.  Defendants' misconduct is malicious as Defendants acted with the intent to cause Plaintiff and a nation of consumers to pay for Products that they were not, in fact, receiving.  Defendants willfully and knowingly disregarded the rights of Plaintiff and a nation of consumers as Defendants were, at all times, aware of the probable dangerous consequences of their conduct and deliberately failed to avoid misleading consumers, including Plaintiff.  Defendants' misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct.  Said misconduct subjected Plaintiff and a nation of consumers to cruel and unjust hardship in knowing disregard of their rights.  Defendants' misconduct is fraudulent as Defendants, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiffs and a nation of consumers.  The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendants.

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

## COUNT FOUR

### Breach of Express Warranty

### (*On Behalf of the Nationwide Class and California Subclass*)

120. **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

121. **Nationwide Class.** Plaintiff brings this claim individually and on behalf of the Nationwide Class and California Subclass (the Class) who purchased the Products within the applicable statute of limitations.

122. **Express Warranty.** By advertising and selling the Products at issue, Defendant made promises and affirmations of fact on the Products' packaging and labeling, and through its marketing and advertising, as described herein. This labeling and advertising constitute express warranties and became part of the basis of the bargain between Plaintiff and members of the Class and Defendant. Defendant purports, through the Products' labeling and advertising, to create express warranties that the Products are, among other things, safe for pets and children (and adults).

123. **Breach of Warranty.** Despite Defendant's express warranties about the nature of the Products, the Products can cause harm to humans and pets, and are therefore not safe.  Thus, the Products are not what Defendant represented them to be. Accordingly, Defendant breached express warranties about the Products and their qualities because the Products do not conform to Defendant's affirmations and promises.

124. **Causation/Damages.** As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products.  Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for breach of express warranty of damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

125.   **Punitive Damages.**  Plaintiff seeks punitive damages pursuant to this cause of action for breach of express warranty on behalf of Plaintiff and the applicable class.  Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving.  Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct.  Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

**COUNT FIVE**

**Unjust Enrichment**

**(*On Behalf of the Nationwide Class and California Subclass*)**

126.   **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

127.   **Nationwide Class.** Plaintiff brings this claim individually and on behalf of the Nationwide Class and California Subclass (the Class) who purchased the Products within the applicable statute of limitations.

128.   **Plaintiff/Class Conferred a Benefit.** By purchasing the Products, Plaintiff and members of the Class conferred a benefit on Defendant in the form of the purchase price of the Products.

129.   **Defendant's Knowledge of Conferred Benefit.** Defendant had knowledge of such

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

benefit and Defendant appreciated the benefit because, were consumers not to purchase the Products, Defendant would not generate revenue from the sales of the Products.

130.   **Defendant's Unjust Receipt Through Deception.** Defendant's knowing acceptance and retention of the benefit is inequitable and unjust because the benefit was obtained by Defendant's fraudulent, misleading, and deceptive representations and omissions.

131.   **Causation/Damages.**   As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for unjust enrichment in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

132.   **Punitive Damages.**  Plaintiff seeks punitive damages pursuant to this cause of action for unjust enrichment on behalf of Plaintiff and the applicable class. Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving.  Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was aware of the probable dangerous consequences of their conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

## VIII.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Defendant as follows:

   a. **Certification:** For an order certifying this action as a class action, appointing Plaintiff as the Class Representative, and appointing Plaintiff's Counsel as Class Counsel;

   b. **Declaratory Relief:** For an order declaring that Defendant's conduct violates the statutes and laws referenced herein;

   c. **Injunction:** For orders requiring Defendant to immediately cease and desist from selling the unlawful Products in violation of law; enjoining Defendant from continuing to market, advertise, distribute, and sell the Products in the unlawful manner described herein; requiring Defendant to engage in an affirmative advertising campaign to dispel the public misperception of the Products resulting from Defendant's unlawful conduct; and requiring all further and just corrective action;

   d. **Damages/Restitution/Disgorgement:** For an order awarding monetary compensation in the form of damages, restitution, and/or disgorgement to Plaintiff and the Class;

   e. **Punitive Damages:** For an order awarding punitive damages;

   f. **Attorneys' Fees & Costs:** For an order awarding attorneys' fees and costs;

   g. **Pre/Post-Judgment Interest:** For an order awarding pre-and post-judgment interest; and

   h. **All Just & Proper Relief:** For such other and further relief as the Court deems just and proper.

Dated: February 16, 2021                    Respectfully submitted,

                                            **CLARKSON LAW FIRM**
                                            By:
                                            */s/ Katherine A. Bruce*
                                            RYAN J. CLARKSON
                                            SHIREEN M. CLARKSON
                                            KATHERINE BRUCE

                                            **MOON LAW APC**
                                            By:
                                            */s/ Christopher D. Moon*
                                            CHRISTOPHER D. MOON
                                            KEVIN O. MOON

                                            *Attorneys for Plaintiff*

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

CLASS ACTION COMPLAINT

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all causes of action and issues so triable.

Dated: February 16, 2021                    Respectfully submitted,

                                            **CLARKSON LAW FIRM**
                                            By:

                                            /s/ *Katherine A. Bruce*
                                            RYAN J. CLARKSON
                                            SHIREEN M. CLARKSON
                                            KATHERINE BRUCE

                                            **MOON LAW APC**
                                            By:

                                            /s/ *Christopher D. Moon*
                                            CHRISTOPHER D. MOON
                                            KEVIN O. MOON

                                            *Attorneys for Plaintiff*